IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO.  3:19-cr-171 |
| | : | |
| v. | : | |
| | : | UNITED STATES' RESPONSE IN |
| NATHAN GODDARD, ET AL., | : | OPPOSITION TO DEFENDANT'S |
| | : | MOTION TO RECONSIDER DETENTION |
| Defendants. | : | ORDER |
| | : | |

The United States of America, through undersigned counsel, respectfully submits its

Response in Opposition to Defendant Cahke Cortner's Motion to Reconsider Detention Order.

The Court should decline to revoke or otherwise amend the detention order of the Magistrate

Judge because the order is consistent with the statutory presumption that "no condition or

combination of conditions will reasonably assure the appearance of the person as required and

the safety of the community" with respect to defendants who—like Cortner—are charged with

serious controlled substances and firearms offenses.  *See* 18 U.S.C. § 3142(e)(3).

Cortner is charged with five federal offenses that all carry the statutory presumption in

favor of detention.  The nature and circumstances of those offenses, moreover, involve conduct

that is as serious as any conduct that may give rise to federal charges.  A federal grand jury has

found probable cause to believe that Cortner participated in a drug trafficking conspiracy that

resulted in the shooting death of DEA Task Force Officer and Dayton Police Department

Detective Jorge Del Rio.  Cortner was located in the basement where the shooting of Detective

Del Rio occurred while possessing the exact same type of firearm—with accessories—used by

co-defendant Nathan Goddard to kill Detective Del Rio.  Also located in the basement with

Cortner and his co-defendants were over four kilograms of fentanyl, six kilograms of cocaine,

several pounds of marijuana, and several thousands of dollars of United States currency. Because of the extremely serious nature of this case, all of the crimes that the grand jury has alleged against Cortner carry a potential punishment of life imprisonment, and two of the crimes carry a potential penalty of death.

For these reasons and others stated more fully below, the statutory presumption in favor of detention, along with the factors under 18 U.S.C. § 3142(g), establish that no condition or combination of conditions will reasonably assure the safety of the community and Cortner's appearance if Cortner is released.  Accordingly, Cortner's motion should be denied.

## <u>BACKGROUND</u>

On November 14, 2019, a federal grand jury indicted Cortner on five counts related to the shooting death of DEA Task Force Officer and Dayton Police Detective Jorge Del Rio: conspiracy to possess with intent to distribute and distribute 400 grams or more of fentanyl, 5 kilograms or more of cocaine, and marihuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) & (D) (Count 1); possession with intent to distribute 400 grams or more of fentanyl, 5 kilograms or more of cocaine, and marihuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) & (D) (Count 5); use and discharge of a firearm resulting in death during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) & (j) (Counts 6 and 8); and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 9).  Cortner faces a mandatory minimum of 10 years up to life imprisonment for Counts 1 and 5; at least 10 years up to life imprisonment (mandatory consecutive to any other term of imprisonment) for Counts 6 and 8; and at least 5 years up to life imprisonment (mandatory consecutive to any other term of imprisonment) for Count 9.  Counts 6 and 8 also carry a potential penalty of death.

Prior to his indictment, Cortner was charged in a criminal complaint and a superseding criminal complaint in Case No. 3:19-MJ-654.  The affidavits in support of those criminal complaints explain the horrific circumstances under which Cortner came to be charged in this case, as well as the gravity of the drug trafficking and firearms activity for which a federal grand jury has charged Cortner.  Specifically, on November 4, 2019, agents and officers of the DEA executed a federal search warrant at 1454 Ruskin Road, in Dayton, Ohio.  Prior to executing the search warrant, the DEA had received information that approximately 10 kilograms of drugs were located in the basement of the residence.  After knocking on the door of the residence, announcing their presence, and receiving no answer, DEA personnel made entry into the residence.  DEA Task Force Officer and Dayton Police Department Detective Jorge Del Rio descended the staircase to the basement and was immediately struck by gunfire.  Following the shooting, other agents and officers were able to secure the area and found Cortner, co-defendants Nathan Goddard and Lionel Combs, and one other individual in the basement.

During a search of the basement, investigators located two loaded FN5-7, 5.7 caliber pistols, both equipped with extended magazines and laser sights.  The FN5-7 is a handgun that fires rifle-sized ammunition.  One of the FN5-7 firearms was located on the floor of the basement near Nathan Goddard and was used to kill Detective Del Rio.  The other FN5-7 was located in a holster on the hip of defendant Cortner and was subsequently secured by the officers. Officers also located the following items in the basement where Cortner was present and carrying his FN5-7: plastic totes containing approximately 50-60 pounds of marijuana, stacked in the open by a television; over four kilograms of fentanyl and over six kilograms of cocaine, located in a storage area underneath the basement stairs; approximately $11,000 in U.S. currency, stacked in the open on a coffee table adjacent to a couch; approximately $40,000 in

3

U.S. currency, stored in a duffel bag under the basement stairs; an AR-style weapon, also located under the basement stairs; and other indicia of drug trafficking, including a kilogram press, a money counter, and digital scales.  Detective Del Rio ultimately died of the wounds he suffered as a result of the shooting.

When interviewed following the shooting, Cortner repeatedly claimed that he did not notice the stacks of U.S. currency that were located in plain view on the coffee table when officers entered the basement, though Cortner's green baseball hat was located on the couch immediately adjacent to the coffee table.  Cortner also admitted to smoking marijuana in the basement while carrying the firearm on his hip.

On November 8, 2019, a detention hearing was held before the Honorable Sharon L. Ovington, United States Magistrate Judge.  Judge Ovington detained Cortner pending further proceedings, determining that no condition or combination of conditions would reasonably assure the appearance of Cortner and the safety of the community.

## ARGUMENT

Cortner is charged with five offenses that all carry the statutory presumption of detention under 18 U.S.C. § 3142(e)(3).  All of these offense also carry potential sentences of life imprisonment or death.  The Magistrate Judge's decision to detain Cortner in this matter pending further proceedings was correct and consistent with the presumption that defendants like Cortner, who are charged by a grand jury with serious drug and firearms offenses, should be detained prior to trial.  That presumption, along with the other factors under 18 U.S.C. § 3142(g), establish that Cortner is properly detained in this matter.

4

### A. Cortner is Detained Consistent with the Statutory Presumption

Whether a defendant should be detained before trial is governed by a number of factors listed in 18 U.S.C. § 3142.  Critically, there is a presumption in favor of detention when a "judicial officer finds that there is probable cause to believe" that a defendant committed: (1) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act; or (2)  an offense listed under section 924(c) of Title 18.  18 U.S.C. § 3142(e)(3)(A) & (B).  Because "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged," the government has fulfilled its burden to establish the presumption in favor of detention when it "presents an indictment including charges listed in section 3142(e)(3)." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citation omitted).

While a defendant can rebut the statutory presumption for detention by introducing evidence that he does not pose a danger to the community or a risk of flight, the presumption does not vanish.  Rather, the presumption

> remains a factor to be considered among those weighed by the district court.  This presumption remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.

*Id*. at 945.

Here, a federal grand jury has indicted Cortner with five offenses that carry the statutory presumption in favor of detention.  Two of the offenses involve violations of the Controlled Substances Act and carry a potential maximum sentence of life imprisonment; three of the offenses involve the use, carrying, and/or discharge of a firearm in connection with a drug

trafficking offense, in violation of 18 U.S.C. § 924(c). Accordingly, the presumption in favor of detention applies.

### B. Evidence Presented by Cortner Does Not Overcome the Presumption

Cortner has submitted arguments and letters on his behalf in an attempt to argue that he is not a risk of flight or a danger to the community. Even if this material is adequate to rebut the statutory presumption initially, it does not overcome the presumption entirely. This is so because the presumption remains a strong factor militating against Cortner's release.

As noted above, the statutory presumption remains a factor in the Court's analysis under the Bail Reform Act even when a defendant submits evidence to rebut dangerousness and risk of flight. "Thus, the mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989).

Defendants like Cortner pose a special risk of danger to society based not only on the deadly substances involved in their illegal activities, but also because firearms are "tools of the trade" in trafficking narcotics. *United States v. Arnott*, 704 F.2d 322, 326 (6th Cir. 1983). Because Cortner is charged with both drug and firearms offenses, the statutory presumption in favor of detention carries even more weight here than in the average presumption case. Indeed, the circumstance of this case demonstrate precisely why Congress has deemed Cortner's offenses worthy of carrying a presumption—a DEA task force officer was killed executing a search warrant at a drug stash house where firearms were carried and used to protect the stash. In light of these circumstances, Congress's judgement that defendants like Cortner ordinarily should be

detained is more than validated in this case. Accordingly, the presumption factor weighs heavily in favor of Cortner's detention.

### C. Detention is Appropriate under the Section 3142(g) Factors

In addition to the statutory presumption strongly weighing in favor of Cortner's detention, the Court must consider the following other factors in deciding whether to detain Cortner pending trial:

1. the nature and circumstances of the offense charged, including whether the offense charged is a crime of violence or involves a controlled substance or firearms;

2. the weight of the evidence against the person;

3. the history and characteristics of the person, including a number of factors such as the person's character, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

4. the nature and seriousness of the danger to the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g). These factors—together with the statutory presumption— demonstrate that detaining Cortner pending trial is lawful and appropriate.

### 1. Cortner should remain in detention given the nature and circumstances of the charged offenses.

The charges and potential penalties in this case are the most serious under federal law. Cortner is charged with drug and firearms offenses that resulted in the killing of a DEA task force officer. During the incident in question, Cortner was carrying the same firearm—loaded and equipped with the same accessories—as the firearm used to kill Detective Del Rio, and was present in a basement stocked with enough fentanyl to kill thousands of people, along with bulk

7

amounts of cocaine and marijuana. The firearms possessed by Cortner and his co-defendant, moreover, were handguns designed to fire rifle-sized rounds. Based on the amount of drugs, the possession and use of the firearms, and the death of Detective Del Rio, the potential penalties for Cortner's offenses are life imprisonment and/or death.

It is hard to describe offenses more serious and circumstances more egregious than those extant in this case. Indeed, in section 3142(g)(1) itself, Congress made clear that it is especially significant if the charges against a defendant include a crime of violence, or involve controlled substances or firearms. Cortner's charges possess all of these features. Given that courts "routinely affirm[], on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence," *Stone*, 608 F.3d at 947 n.6, there is no question in this case that the nature and circumstances of the offenses militate heavily in favor of pretrial detention.

> **2. Cortner should remain in detention given the weight of the evidence of dangerousness.**

Second, the weight of the evidence against Cortner is very strong with respect to the risk to the community in this case. The government disagrees with Cortner's assessment regarding the weight of the evidence of his guilt, but the proper inquiry under this factor does not involve an analysis of the defendant's guilt. As the Sixth Circuit has explained, the weight-of-the-evidence factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948.

As detailed above, the weight of the evidence of Cortner's dangerousness is substantial based on the nature and circumstances of the offenses, including, among other things, the presence of fentanyl and other controlled substances in the basement, Cortner's possession of a loaded firearm, and the killing of a DEA task force officer. Cortner argues that his firearm was

never fired and that possession of a weapon alone is not enough to establish a risk to the community.  He also attempts to rely on his concealed-carry license and Goddard's statements apparently taking responsibility for the shooting.  But Cortner was present in a basement carrying a loaded "tool of the drug trade" in the presence of massive amounts of drugs and thousands of dollars of United States currency stacked in the open.   This case goes far beyond the mere possession of a firearm and run-of-the-mill drug cases wherein defendants, with no involvement in violence, are routinely detained pending trial.  The weight of the evidence of Cortner's dangerous is strong and militates in favor of detention.

### 3.  Cortner should remain in detention given his history and personal characteristics.

 Cortner also should remain detained due to his history and personal characteristics.  As outlined in the pretrial report—which recommended that Cortner be detained—Cortner has several failures to appear in his record, indicating a history of failing to show up for court and failing to comply with court orders.  Additionally, while not extensive, Cortner does have a criminal history.  *E.g.*, *Stone*, 608 F.3d at 950 ("courts have never required a prior criminal record before ordering detention.").  In 2000, he was charged with riot and eventually convicted of misconduct at an emergency.  More recently, in 2013, he was charged with improperly carrying a concealed weapon, though that charge appears to have been dropped.

Cortner's substance abuse history is troubling as well, especially when considering his admission that he used marijuana on evening that Detective Del Rio was killed.  Cortner admitted in the pretrial report to marijuana use and to smoking marijuana on the day of the alleged offense.  Notably, Cortner's marijuana use on the evening that Detective Del Rio was killed occurred in conjunction with Cortner carrying a loaded firearm with an extended magazine

on his hip.[1]  Contrary to the argument in his motion then, Cortner's use of marijuana is a factor

that should give the Court great concern.  And when viewing the letters submitted in support of

Cortner's character, the Court should also consider that Cortner was less than forthcoming when

interviewed by law enforcement after the shooting incident, denying even seeing the stacks of

thousands of dollars of U.S. currency on the coffee table in the basement.

Cortner has submitted information regarding his long-standing ties to the community,

including his employment and family circumstances.  But the character letters submitted by

Cortner do not negate the nature and circumstances of the crimes with which he is charged.  Nor

do his employment history and ties to the community completely mitigate the potential for flight

or non-appearance.  "Strong family and community ties are relevant to a defendant's risk of

flight, but they are rarely dispositive of the issue, especially where a statutory presumption in

favor of detention arises."  *United States v. Rankin*, 289 F. Supp. 3d 846, 850 (S.D. Ohio 2017).

Cortner's history and characteristics favor pretrial detention.

>  **4. Cortner should remain in detention given the nature and seriousness of the danger to the community.**

Finally, the discussion above establishes that Cortner's release would pose a danger to the

community.  The grand jury has found probable cause to believe that Cortner engaged in

behavior that demonstrates that he is a danger to the community.  Adding to the dangerousness

analysis is the fact that the charges in this case trigger the statutory presumption for detention.

As described above, this presumption represents Congressional findings that narcotics and

firearms offenders are dangerous and likely to continue engaging in criminal conduct, undeterred

---

[1] While not currently charged with the offense, Cortner's actions appear to violate 18 U.S.C. § 922(g)(3) (prohibiting the possession of a firearm by an unlawful user of a controlled substance).

by federal charges, penalties, or conditions of release.  Cortner's case fits well within this Congressional paradigm.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully submits that the Court should deny defendant's motion.

Respectfully submitted,

DAVID M. DeVILLERS
United States Attorney


s/ Dominick S. Gerace
DOMINICK S. GERACE (OH 0082823)
BRENT G. TABACCHI (6276029)
Assistant United States Attorneys
200 West Second Street, Suite 600
Dayton, Ohio 45402
Office: (937) 225-2910
Fax: (937) 225-2564
dominick.s.gerace@usdoj.gov
brent.tabacchi@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of December, 2019, I filed the foregoing using the

Court's CM/ECF system, which will send notification of this filing to all counsel of record.


s/ Dominick S. Gerace
DOMINICK S. GERACE (OH 0082823)
Assistant United States Attorney