IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.: 3:19CR171 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| NATHAN GODDARD, ET AL., | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
MOTION TO SEVER TRIAL OF DEFENDANT CAHKE CORTNER**

The United States hereby files its response in opposition to Defendant Cahke Cortner's

Motion to Sever (Doc. No. 46). The motion should be denied. Cortner is properly joined in the

indictment with his co-defendants under Fed. R. Crim. P. 8(b) because all of the defendants are

alleged to have participated in the same act or transaction, or in the same series of acts or

transactions, constituting the charged offenses. Additionally, Cortner has failed to meet his

burden of showing the specific and compelling prejudice required for severance under Fed. R.

Crim. P 14(a). He has not demonstrated a serious risk that a joint trial would compromise a

specific trial right or prevent the jury from making a reliable determination.

## BACKGROUND

On November 14, 2019, a federal grand jury returned an eleven-count indictment against

Cahke Cortner, Nathan Goddard, and Lionel Combs III, charging a number of violations of

federal law, all of which were related to the shooting death of DEA Task Force Officer (TFO)

and Dayton Police Detective Jorge Del Rio during the execution of a federal drug search warrant.

These charges include: conspiracy to possess with intent to distribute and distribute 400 grams or

more of fentanyl, 5 kilograms or more of cocaine, and marihuana, in violation of 21 U.S.C. §§

846 and 841(b)(1)(A) & (D) (Count 1); murder of a federal law enforcement officer, in violation

1

of 18 U.S.C. § 1114 (Count 2); murder of a law enforcement officer working in furtherance of a federal criminal investigation, in violation of 18 U.S.C. § 1121(a) (Count 3); assault of a federal law enforcement officer, in violation of 18 U.S.C. § 111(a) and (b) (Count 4); possession with intent to distribute 400 grams or more of fentanyl, 5 kilograms or more of cocaine, and marihuana, and aiding and abetting the same, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & (D), and 18 U.S.C. § 2 (Count 5); use and discharge of a firearm resulting in death during and in relation to a drug trafficking crime or crime of violence, in violation of 18 U.S.C. § 924(c) & (j) (Counts 6 through 8); carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 9); maintaining a drug premises, in violation of 21 U.S.C. § 856 (Count 10); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count 11).  Cortner is named in Counts 1, 5, 6, 8, and 9 of the indictment.

The circumstances underlying the indictment are set out in a criminal complaint and amended criminal complaint filed against Cortner in Case No. 3:19MJ654.  Specifically, on November 4, 2019, agents and officers of the DEA executed a federal search warrant at 1454 Ruskin Road, in Dayton, Ohio.  Prior to executing the search warrant, the DEA had received information from a cooperating witness that approximately 10 kilograms of drugs were located in the basement of the residence.  After knocking on the door of the residence, announcing their presence, and receiving no answer, DEA personnel made entry into the residence.  TFO Jorge Del Rio descended the staircase to the basement and was immediately struck by gunfire. Following the shooting, other agents and officers were able to secure the area and found Cortner, co-defendants Nathan Goddard and Lionel Combs III, and one other individual in the basement.

During a search of the basement, investigators located two loaded FN5-7, 5.7 caliber pistols, both equipped with extended magazines and laser sights.  One of the FN5-7 firearms was

located on the floor of the basement near Nathan Goddard and was used to kill TFO Del Rio. The other FN5-7 was located in a holster on the hip of defendant Cortner and was subsequently secured by the officers. Officers also located the following items in the basement where Cortner was present: plastic totes containing approximately 50-60 pounds of marijuana, stacked in the open by a television; over four kilograms of fentanyl and over six kilograms of cocaine, located in a storage area underneath the basement stairs; approximately $11,000 in U.S. currency, stacked in the open on a coffee table adjacent to a couch; approximately $40,000 in U.S. currency, stored in a duffel bag under the basement stairs; an AR-style weapon, also located under the basement stairs; and other indicia of drug trafficking, including a kilogram press, a money counter, and digital scales. TFO Del Rio ultimately died of the wounds he suffered as a result of the shooting.

The cooperating witness subsequently identified Cortner as being present at the Ruskin Road residence the day prior to the shooting, November 3, 2019, during a drug transaction. At that time, Cortner was also wearing a firearm with an extended magazine that appeared to match the firearm Goddard possessed. When interviewed following the shooting, Cortner repeatedly claimed that he did not notice the stacks of U.S. currency that were located in plain view on the coffee table when officers entered the basement, though Cortner's green baseball hat was located on the couch immediately adjacent to the coffee table.

Law enforcement recovered approximately 14 cellular telephones in the basement following the shooting. After obtaining a warrant to search these devices, law enforcement located—on a cell phone that the government attributes to Cortner—text messages sent and received on November 4, 2019. Those text messages discuss, in commonly-used coded language, marijuana, cocaine, and fentanyl, as well as prices for cocaine and fentanyl that were

consistent with prevailing prices in the Dayton area.

## **ARGUMENT**

Cortner argues that he was improperly joined with his co-defendants under Fed. R. Crim. P. 8(b) and that severance, in any event, should be granted under Fed. R. Crim. P. 14(a).  His arguments lack merit.  Cortner is properly joined with his co-defendants under Fed. R. Crim. P. 8(b) because all of the defendants are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting the charged offenses.  Indeed, the interconnectedness of the charges in this matter is apparent on the face of the indictment and the charges overlap to such an extent that they are impossible to separate on a factual basis.

Moreover, Cortner has failed to meet his burden of showing the specific and compelling prejudice required for severance under Fed. R. Crim. P. 14(a).  While Cortner claims that a joint trial will prejudice him in several ways, those claims are contrary to law and fact.  Whether viewed individually or collectively, Cortner's arguments for prejudice do not demonstrate that a joint trial would create a serious risk that a specific trial right would be compromised or that the jury would be prevented from making a reliable judgment about his guilt or innocence.  Accordingly, this Court should deny Cortner's motion for severance.

### **A.  Cortner is Properly Joined With His Co-Defendants Under Rule 8(b)**

Cortner initially argues that the indictment improperly joins him with his co-defendants under Rule 8(b).  This argument is misplaced.  Rule 8(b) provides that an indictment,

> may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

The Supreme Court has explained that this rule exists to "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of

crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986).  Joint trials under Rule 8 also "generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  As a result, "[t]here is a preference in the federal system for joint trials." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

The Sixth Circuit has likewise stated that "[a]s a general rule, persons jointly indicted should be tried together."  *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987); *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993).  This is so because "[s]eparate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *See United States v. Caver*, 470 F.3d 220, 238 (6th Cir.2006).  Thus, "the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987).  Rule 8(b), consequently, "can, and should, be broadly construed in favor of initial joinder."  *Id.*

Under these principles, Cortner and his co-defendants are properly joined under Rule 8(b).  First, "[i]t is settled law that an allegation of conspiracy creates a prima facie presumption of proper joinder."  *United States v. Tsanges*, 582 F. Supp. 237, 239 (S.D. Ohio 1984).   In Count One of the Indictment, Cortner and his co-defendants are charged with participating in a drug conspiracy involving fentanyl, cocaine, and marijuana on or about November 4, 2019.  While Cortner asserts that the conspiracy charge is being "stretched" to encompass him,[1] the fact is that Cortner was located in a basement with kilogram quantities of drugs and while in possession of the same firearm (down to the accessories) that his co-defendant Nathan Goddard used to kill TFO Del Rio.  A cooperating witness places Cortner in the same location with a firearm during a

---

[1] Doc. No. 46 at PAGEID 273.

drug transaction the day prior, and a cell phone seized in the basement, which the government attributes to Cortner, contains text messages sent and received on November 4, 2019. Those text messages are consistent with drug trafficking activity, including the use of common coded language to discuss the prices of the same controlled substances found in the basement that very day. The grand jury properly charged Cortner as a member of a drug trafficking conspiracy, and the presumption of proper joinder applies.[2]

Moreover, because the remaining charges in the indictment are logically interrelated with this conspiracy charge, this presumption of proper joinder cannot be overcome. Under Rule 8(b), "[a] series of acts or transactions sufficient to support joinder of more than one defendant exists where there is substantial identity of facts or participants." *Tsanges*, 582 F. Supp. at 239. The Sixth Circuit has similarly recognized that a group of acts or transactions "constitutes a 'series' if they are logically interrelated" and involve "overlapping proof." *See United States v. Johnson*, 763 F.2d 773, 776 (6th Cir. 1985); *United States v. Beverly*, 369 F.3d 516, 533 (6th Cir. 2004); *Swift*, 809 F.3d at 322.

This case easily meets those requirements. Each count of the indictment arises from the same set of factual circumstances discussed with respect to the conspiracy charge and will require substantial overlapping proof. Further, the interconnectedness of the charges clearly appears on the face of the indictment. Count One charges all three defendants with a drug trafficking conspiracy involving fentanyl, cocaine, and marijuana, occurring at least on or about November 4, 2019. Counts Two, Three, and Four charge Goddard with murder and assault related to the shooting death of TFO Del Rio, also on or about November 4, 2019. Count Five

---

[2] Cortner's discussion of the evidence in this case is misplaced in any event. The propriety of joinder under Rule 8(b), as discussed below, is apparent on the face of the indictment here. Moreover, Cortner attempts to draw factual comparisons between this case—in a pretrial posture—and cases decided on appeal that feature a fully-developed record.

charges all three defendants with possessing with intent to distribute fentanyl, cocaine, and marijuana, on or about November 4, 2019, and aiding and abetting the same—the same substances and date charged in the conspiracy in Count One.

Counts Six, Seven, and Eight charge all three defendants (Counts Six and Eight) and Goddard alone (Count Seven) with using, carrying, brandishing, and discharging a firearm causing the death of TFO Del Rio, also on or about November 4, 2019. Count Six explicitly references Count One as the underlying drug trafficking offense, Count Seven explicitly references Count Four as the underlying crime of violence, and Count Eight explicitly references Count Five as the underlying drug trafficking offense. The description of these charges and the commonality in date also demonstrates that these counts are interconnected with Counts Two, Three, and Four (the murder and assault of TFO Del Rio on or about the same date), thereby further connecting those three counts to Counts One and Five.

Count Nine charges Cortner with carrying a firearm during and in relation to a drug trafficking offense, which is also alleged to have occurred on or about November 4, 2019, and explicitly references Count One as the underlying drug trafficking crime. Count Ten is alleged to have occurred on or about November 4, 2019, and charges Combs with the use of the Ruskin Road residence to maintain fentanyl, cocaine, and marijuana, the same substances referred to in Counts One and Five. Finally, Count Eleven charges Goddard with being a felon in possession of a firearm on or about the same date, November 4, 2019, thereby demonstrating interconnectedness with the allegations in Counts Two, Three, Four, Six, Seven, and Eight. Proper joinder, moreover, does not require that all defendants be charged with the same offenses, be charged in every count, or participate in every act charged. Fed. R. Crim. P. 8(b) ("All defendants need not be charged in each count."); *United States v. Kelley*, 461 F.3d 817, 830 (6th

Cir. 2006) (finding joinder proper where "both defendants did not participate in all acts detailed in the indictment").

Despite the interconnectedness of the charges here, Cortner asserts that joinder is improper based on several cases. But all of those cases are distinguishable. Cortner first discusses *Tsanges*, in which three defendants were charged in an eighteen-count indictment with various fraud offenses. 582 F. Supp. at 239. The primary defendant, Stephany Tsanges, was charged in all eighteen counts. A second defendant, Donna Teegarden, was charged with Stephany Tsanges in four fraud counts, allegedly occurring in 1978. A third defendant, Argee Tsanges, was charged with Stephany Tsanges in six fraud counts, allegedly occurring in 1980. *Id*. at 239-40.

The court concluded that joinder was improper under Rule 8(b) because not all of the offenses charged against Teegarden and Argee Tsanges arose from the same series of acts or transactions as the remaining counts in the indictment. *Id*. at 240. The court noted that the offenses charged against Teegarden occurred in a distinct time-period, in 1978, while the offenses charged against Argee Tsanges occurred in 1980. Further, certain offenses charged only against Stephany Tsanges occurred in 1981. *Id*. at 241. Consequently, the court concluded that the facts alleged by the government "do not suggest a single scheme encompassing all defendants and all offenses charged." *Id*. at 240. Rather, the case fell "into three separate parts," and Argee Tsanges and Donna Teegarden were each involved in "two distinct parts." *Id*. at 240-41. Here, unlike *Tsanges*, there are no separate and distinct parts of this case. The defendants are all charged in interconnected counts that arise from the same set of circumstances occurring on or about November 4, 2019.

Defendant also relies on *United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982). In

*Hatcher*, both defendants were jointly indicted for drug crimes. Although both defendants had been charged with three counts relating to the possession and distribution of heroin, one of the defendants (Hatcher) had also been charged with three counts relating to the possession and distribution of cocaine in an entirely unrelated series of offenses. *Id*. at 440. The Sixth Circuit held that since there was "no connection between [co-defendant] Manetas and the cocaine-related charges against Hatcher," the joinder of the two defendants was improper. This case, of course, is distinguishable from *Hatcher* because each count of the indictment arises out of the same act or transaction, as discussed above.[3]

Finally, *United States v. Gentile*, 495 F.2d 626 (5th Cir. 1974), is also inapposite. In *Gentile*, the defendant was charged with his co-defendant in a four-count indictment. Count 1 charged both defendants with conspiracy to distribute PCP and Count 2 charged both with distribution of PCP. These activities were alleged to have occurred in October 1972. Counts 3 and 4 charged only the co-defendant with distributing LSD, allegedly occurring in November 1972. *Id*. at 629. The district court severed Count 4 from the case, but not Count 3. The Fifth Circuit found that Count 3 was not part of the same series of acts or transactions as Counts 1 and 2, and required severance:

> [T]he proof required to establish the sale of PCP on October 23, as alleged in Count 2, is entirely different from the proof required to establish the sale of LSD on November 11, as alleged in Count 3. The two transactions occurred almost three weeks apart, the sales took place at different locations, the transactions involved different drugs, and the sources from whom [co-defendant] procured the drugs were different.

---

[3] Cortner also discusses the *Hatcher* Court's Fourth Amendment holding suppressing the cocaine found during a warrantless search of Hatcher's dwelling and the Court's subsequent conclusion that his conviction on the non-cocaine charges was influenced by the cocaine evidence. *See Hatcher*, 680 F.2d at 443-445; Doc. No. 46 at PAGEID 272-73. That holding is not related to the Court's severance decision with respect to Hatcher's co-defendant, Manetas, and is inapplicable here.

*Id*. at 630-31.  Unlike the circumstances in *Gentile*, this case features overlapping proof with respect to each indicted count.

In sum, joinder is proper under Rule 8(b) in this case.[4]  Contrary to Cortner's claims, joinder of these defendants is not a product of "unchecked overreach" by the government or "tactical and strategic advantages," but rather a proper application of Rule 8(b) and the case law interpreting that rule.

### B. Cortner Has Failed to Show the Specific and Compelling Prejudice Required for Severance under Rule 14

Cortner also argues that his trial should be severed from that of his co-defendants under Fed. R. Crim. P. 14(a).  That rule provides in pertinent part:

> (a) **Relief**.  If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires.

The ordinary prejudice inherent in any joint trail, however, does not require severance under Rule 14(a).  As the Sixth Circuit has stated, "a defendant is not entitled to a severance simply because the evidence against a co-defendant is far more damaging than the evidence against him." *Causey*, 834 F.2d at 1287.  Likewise, "a defendant does not have a right to a separate trial merely because his/her likelihood of acquittal would be greater if severance were granted." *Beverly*, 369 F.3d at 534.  Moreover, "[a]bsent a showing of substantial prejudice, spillover of evidence from one case to another does not require severance." *United States v.*

---

[4] Cortner also cites two cases, *United States v. List*, 200 F. App'x 535 (6th Cir. 2006), and *United States v. Wirsing*, 719 F.2d 859 (6th Cir. 1983), each of which addresses severance under Rule 8(a).  Rule 8(a) permits joinder of two or more offenses that "are of the same or similar character or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  It is not clear whether Cortner is also arguing that joinder of offenses is improper here.  But for the reasons stated with respect to Rule 8(b)—namely, that the offenses charged in this indictment are based on the same act or transaction—joinder of offenses is also proper under Rule 8(a).

*Gallo*, 763 F.2d 1504, 1526 (6th Cir.1985) (citing *United States v. Ricco*, 549 F.2d 264, 270-71 (2d Cir.1977)).

Based on these principles, defendants seeking severance under Rule 14(a) are subject to a "heavy burden of showing specific and compelling prejudice," *Causey*, 834 F.2d at 1287, and a district court should grant severance to properly joined defendants only if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "The risk of prejudice will vary with the facts in each case," and "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*; *see also Swift*, 809 F.2d at 323("[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately.").

Cortner argues that a joint trial will lead to prejudice for several reasons. But none of his arguments—addressed below—establishes that severance is required under Rule 14(a), whether viewed individually or collectively.

1. <u>Speedy Trial</u>. First, Cortner argues that he will suffer prejudice because, absent severance, he will have to wait a substantial amount of time before a trial commences. Cortner bases this argument on an assumption that Goddard will be the only defendant to whom the death penalty process will apply. Yet, all three defendants are charged with death-eligible offenses, and no decision has been made by the government regarding an intention to seek or not to seek the death penalty with respect to any defendant.[5] Additionally, this Court has already made a determination that this case features complexities warranting additional time for

---

[5] The government will continue to keep the Court apprised of any developments in this regard. However, as stated below, the fact that a joint trial may include both capital and non-capital defendants also does not require severance *per se*.

preparation under 18 U.S.C. § 3161(h)(7), and has set a reasonable amount of time within which the government must file a notice regarding the death penalty. As a result, Cortner's argument that he will suffer prejudice due to trial delay is, at the very least, entirely too premature to warrant severance under Rule 14(a) at this time. *E.g.*, *United States v. Mithavayani*, No. 6:17-CV-25, 2018 WL 4959632, at * (E.D. Ky. Oct. 15, 2018) (concluding that "speculative trial delay" does not constitute substantial, undue, or compelling prejudice under the Rule 14(a) rubric).

Additionally, the Speedy Trial Act specifically allows for a "reasonable period of delay when a defendant has been joined for trial with co-defendants as to whom the time for trial has not run, and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). The purpose of this provision is to ensure that the rules of severance are not altered, and that the government is not forced to prosecute the first defendant ready for trial separately or be subject to a speedy trial dismissal. *See United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986) (quoting S. Rep. No. 1021, 93d Cong., 2d Sess. 38 (1974)). "Congress thus explicitly 'recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice [feeling that] the efficiency and economy of joint trials far outweighed the desirability of granting severance where the criterion was simply the passage of time.'" *United States v. Monroe*, 833 F.2d 95, 100 (6th Cir. 1987) (quoting *United States v. Otero-Hernandez*, 743 F.2d 857 (11th Cir. 1984)).

Accordingly, courts have held that delay of trial occasioned by joinder of defendants does not establish sufficient prejudice to warrant severance. *United States v. Jackson*, No. 12-1, 2014 WL 121976, at *5 (E.D. La. Jan. 13, 2014) (death-eligible defendant's motion to sever denied where defendant argued for severance based on length of capital authorization process); *United States v. Logan*, Nos. 97-5912, 97-5914, 1999 WL 551353, at *14 (6th Cir. July 19, 1999)

(rejecting argument that severance was proper based on speedy trial rights where defendant made no showing that delay hindered defendant's ability to prepare defense or substantially prejudiced his case); *United States v. Lockwood*, No. 11-CR-085, 2012 WL 6204194 at *2-*3 (E.D.N.Y. Dec. 12, 2012) (denying motion to sever based on speedy trial grounds where joint trial was set to take place 11 months after arraignment); *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 368-70 (E.D.N.Y. 2005) ("Defendant has not demonstrated any reason as to why he is prejudiced by a joint trial, except to remind this Court that he is incarcerated awaiting trial."); *cf. United States v. Lighty*, 616 F.3d 321, 348-51 (4th Cir. 2010) (rejecting severance arguments where capital and non-capital defendants were tried together); *United States v. Schlegel*, 687 F. App'x 26, 28 (2d Cir. 2017) (rejecting defendant's argument that denial of motion to sever prejudiced her right to a speedy trial where delay between indictment and trial was over three years).

Further, Cortner does not explain the actual prejudice that he would suffer from a delay. He does not identify evidence that would disappear or witnesses that would be unavailable if he is tried jointly with his co-defendants. Nor is there any basis to claim that the United States seeks a joint trial that will delay proceedings in bad faith or for tactical advantage. *See, e.g.*, *United States v. Sutton*, 862 F.3d 547, 562 (6th Cir. 2017) (noting that prejudice for constitutional speedy trial involves consideration of, among other factors, whether delay caused damage to the defense and whether government seeks a tactical advantage over moving defendant). Accordingly, Cortner's speedy trial argument does not demonstrate the specific and compelling prejudice required for severance under Rule 14.

        2.    <u>Jury Selection</u>. Second, Cortner argues that the selection of a death-qualified jury as to defendant Goddard would prejudice Cortner because a death-qualified jury is

more likely to convict.  Again, as discussed above, no decision has been made at this point regarding whether any of these defendants will or will not face the death penalty.  Consequently, whether a death-qualified jury will be empaneled in this matter is unknown, and Cortner's argument in this regard is also premature.

Even so, the Supreme Court has expressly held that death qualification does not violate either a capital defendant's or a jointly-tried non-capital defendant's rights to an impartial jury. *Buchanan v. Kentucky*, 483 U.S. 402, 415-20 (1987).  In so holding, the *Buchanan* Court explained:

> Underlying the Commonwealth's interest in a joint trial is a related interest in promoting the reliability and consistency of its judicial process, an interest that may benefit the noncapital defendant as well. In joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials. From such a perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in the sentencing. This jury perspective is particularly significant where, as here, all the crimes charged against the joined defendants arise out of one chain of events, where there is a single victim, and where, in fact, the defendants are indicted on several of the same counts.

*Id*. at 418-19 (citation omitted); *see also Lighty*, 616 F.3d at 348-51 (capital and non-capital defendants tried together).

The reasoning in *Buchanan* squarely addresses the fact pattern here, where all defendants are charged with crimes arising out of one chain of events, there is a single victim, and the defendants are indicted on several of the same counts.  Accordingly, the possibility that a death-qualified jury may be empaneled in this matter does not demonstrate that Cortner will be prejudiced by a joint trial.

        3.     <u>The Evidence</u>.  Third, Cortner argues that the evidence "may be different between Mr. Goddard and Mr. Cortner therefore creating prejudice to a jury who may have difficulty distinguishing the evidence and its complexity."  Doc. No. 46 at PAGEID 280.  There

is no basis in fact for this argument.  As discussed at length above, there is significant, if not

total, factual overlap for every count charged in the indictment.  The evidence presented against

Cortner will be, in large measure, the same evidence presented against Goddard.  To be sure, at

the time of the shooting, Cortner was in the basement wearing the same type of firearm as the

firearm that Goddard used to kill TFO Del Rio.  In addition, text messages found on a cellphone

attributable to Cortner contain communications made on the same day of the shooting that

discuss the types of drugs, and prices for those drugs, that were found in the basement following

the shooting.  Cortner's conduct therefore demonstrates a high level of co-conspirator

culpability, countering any concerns regarding prejudice from evidence of Goddard's actions.

Furthermore, the Sixth Circuit has squarely rejected the contention that a likely disparity

in the quantity and quality of evidence against a co-defendant merits a separate trial.  *E.g.*,

*United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir. 2006) ("severance is not required because

the proof may be stronger against one defendant than another"); *Causey*, 834 F.2d at 1288 ("[A]

defendant is not entitled to a severance simply because the evidence against a codefendant is far

more damaging than the evidence against him. . . . The presentation of evidence applicable to

more than one defendant is simply a fact of life in multiple defendant cases.").  Because "juries

are presumed capable of following instructions regarding the sorting of evidence and the separate

consideration of multiple defendants," *United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995),

Cortner's argument should be rejected.

4.      Severity of Charges.  Fourth, Cortner argues that the severity of the

charges against Goddard will prejudice Cortner.  But the severity of the charges is no different

for Cortner than it is for Goddard.  Both are charged with death-eligible offenses.  While

Goddard is charged with additional counts because he is alleged to have pulled the trigger of the

firearm that killed TFO Del Rio, all three defendants nevertheless are charged with liability for the shooting death of TFO Del Rio by virtue of 18 U.S.C. 924(c) & (j) and *Pinkerton v. United States*, 328 U.S. 640 (1946). And, as the Supreme Court outlined in *Buchanan*, even less culpable defendants benefit from a joint trial. The government's interests "in promoting the reliability and consistency of its judicial process" may also inure to the benefit less culpable defendants. *Buchanan*, 483 U.S. at 418. This is so because "[i]n joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials. From such a perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in the sentencing." *Id.*

5. <u>*Bruton*</u>. Fifth, relying on *Bruton v. United States*, 391 U.S. 123 (1968), Cortner argues that severance is required based on the possibility that the government might introduce at trial statements made by a non-testifying co-defendant. But Cortner's argument is misplaced for two reasons. First, severance is not automatically required when *Bruton* is implicated in a case. As the Tenth Circuit has stated, "*Bruton* . . . does not hold that defendants in joint trials involving *Bruton* problems are entitled to separate trials." *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990). Rather, "*Bruton* only requires that in a joint trial a defendant must be given an opportunity to cross-examine his codefendant when the government introduces a codefendant's confession that incriminates the defendant." *Id.* Accordingly, even in cases where *Bruton* is implicated, separate trials are not required. For example, to address a *Bruton* problem, the government may redact any offending references to the defendant in the co-defendant's statement and seek a limiting instruction. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Gray v. Maryland*, 523 U.S. 185, 192 (1998). Such measures satisfy the Sixth

Amendment even if the jury could conclude that the confession incriminates a co-defendant "by linking the statement to other evidence" presented at trial. *United States v. Ford*, 761 F.3d 641, 654 (6th Cir. 2014).

Second, it is not clear that *Bruton* is even implicated in this case. In *Bruton*, the Supreme Court held that an out-of-court confession made by one defendant *that implicates another defendant* in the crime cannot be introduced in a joint trial where the declarant does not take the stand. *Bruton*, 391 U.S. at 137. While Cortner asserts that his co-defendants' statements are a "mixture of inculpatory and exculpatory matters," he points to no specific statement implicating him and fails to explain why any such statement cannot be redacted. Indeed, in his motion for bond reconsideration, Cortner notes that defendant Goddard apparently "has accepted responsibility for the shooting and the drugs. He has exonerated the other two Defendants."[6] Doc. No. 19 at PAGEID 168. To be sure, Cortner's armed presence in the basement on both the day of the shooting and during a drug transaction on the day prior, as well as text messages on his phone discussing the price of the drugs found in the basement, demonstrate Cortner's liability as a co-conspirator under federal law and directly contradict Goddard's statements. Nevertheless, this case is distinguishable from *United States v. Lujan*, 529 F. Supp. 2d 1315, 1324 (D. N.M. 2007), where the defendants each gave lengthy statements inculpating each other

---

[6] If Cortner contends that it is these statements by Goddard that warrant severance, that contention fails as well because the statements are hearsay as to Cortner. This is so because the only reason Cortner would seek to admit them would be to prove the truth of the matter asserted. *See, e.g.*, *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991) ("We conclude that the videotape was not material for *Brady* purposes because it was inadmissible as evidence. Any exculpatory statements by Roderick on the videotape could be useful to the defendant only if offered for their truth and, therefore, they would be inadmissible hearsay."). And it is tenuous at best for a defendant to invoke inadmissible evidence as the premise for a severance.

that could not be redacted based on the numerous references to each co-defendant.[7]  Because he

has identified no statement that might incriminate him, Cortner's *Bruton* argument fails to satisfy

his burden of showing specific and compelling prejudice.

      6.     <u>Irreconcilable Defenses</u>.  Sixth, Cortner asserts that severance is required

because this case features "mutually antagonistic defenses."  Mutually antagonistic defenses

typically arise "when one person's claim of innocence is predicated solely on the guilt of a co-

defendant," *Harris*, 9 F.3d at 501—*i.e.*, "when two defendants both claim they are innocent and

each accuses the other of the crime," *Zafiro*, 506 U.S. at 540.  But like his *Bruton* argument,

Cortner's argument fails to explain how each defendant in this case will assert a mutually

antagonistic defense.  As discussed above, in his motion for bond reconsideration, Cortner

describes Goddard as providing exonerating statements regarding his co-defendants.  The highly

questionable veracity these statements notwithstanding, they do not establish the prospect for

mutually antagonistic defenses in this case.

      The Supreme Court, moreover, has held that such defenses are not prejudicial *per se*.  *Id.*

at 538.  "Hostility among defendants or the attempt of one defendant to save himself by

inculpating another does not require that defendants be tried separately."  *United States v. Fields*,

763 F.3d 443, 457 (6th Cir. 2014) (quoting *United States v. Warner*, 971 F.2d 1189, 1196 (6th

Cir. 1992)).  "Instead, the burden is on Defendants 'to show that an antagonistic defense would

present a conflict so prejudicial that defenses are irreconcilable, and the jury will unjustifiably

infer that this conflict alone demonstrates that both are guilty.'"  *Id.*  For the reasons stated above,

---

[7] Additionally, Rule 14(b) provides a procedure for a Court to examine the statements of co-defendants prior to a ruling on severance.  *See* Fed R. Crim. P. 14(b) ("Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.").  The Court should employ that procedure prior to making any determination of whether severance is appropriate based on *Bruton*.

Cortner has failed to meet this burden here.

7. <u>Jury Compartmentalization</u>. Seventh, Cortner argues that the jury will be unable to compartmentalize the "radically differing evidence" against Cortner and his co-defendant Goddard, again claiming the evidence of a conspiracy as to Cortner is "gossamer thin." But as discussed at length above, substantial evidence links Cortner to this conspiracy, the evidence presented at trial against all three defendants will substantially overlap, and Cortner faces charges just as severe as Goddard. In such circumstances, Cortner cannot demonstrate that a jury would be incapable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants.

8. <u>Judicial Economy</u>. Lastly, Cortner argues that severance would simplify proceedings, permit a more orderly disposition, and reduce hardship to the parties. Not so. As discussed above, the very purpose of joinder is to "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial," *Lane*, 474 U.S. at 449, and to "avoid[] inconsistent verdicts and enabl[e] more accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). A joint trial of this matter would properly conserve resources and ensure an accurate assessment of culpability for these co-conspirators.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Cortner's motion for severance.

Respectfully submitted,

DAVID M. DEVILLERS
UNITED STATES ATTORNEY


By: s/Dominick S. Gerace
DOMINICK S. GERACE
BRENT G. TABACCHI
Assistant United States Attorneys
ERIN LEIGH CLAYPOOLE
Special Assistant United States Attorney
200 West Second Street, Suite 600
Dayton, Ohio 45402
Telephone: (937) 225-2910
Fax: (937) 225-2564
Dominick.S.Gerace@usdoj.gov
Brent.Tabacchi@usdoj.gov
ClaypooleE@mcohio.org

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on defendants' counsel this 1st

day of April 2020 via the Court's ECF System.


s/Dominick S. Gerace
DOMINICK S. GERACE
Assistant United States Attorney