UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CAHKE CORTNER,

    Defendant.

Case No. 3:19-cr-171-2

District Judge Michael J. Newman

**ORDER OVERRULING DEFENDANT CAHKE CORTNER'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

Previously in this felony criminal case, the jury found Defendant Cahke Cortner ("Defendant") guilty of four offenses including, in part, the intentionally killing of Drug Enforcement Agency Task Force Officer Jorge DelRio during a drug trafficking crime and conspiracy to possess with intent to distribute fentanyl, and to distribute, cocaine, and marijuana. After trial, the United States Probation Office ("Probation") conducted an investigation and issued a final Presentence Investigation Report ("PSR"). Defendant raises two objections to the PSR to which the Government and Probation have responded. Doc. No. 260 at PageID 1654-66.

**I.**

Defendant's first set of objections includes multiple challenges to certain paragraphs in the PSR. He objects to paragraph 41's reliance on information about "what the writer was advised by investigators." *Id*. at 1654. He also contends that much of what paragraph 41 describes is at odds with the witness testimony at trial. *Id*.

Defendant also objects to information under the PSR's heading, "The Offense Conduct," in paragraphs 27 through 31. He argues that these paragraphs do not mention him because he was not

involved in this offense conduct, and trial testimony did not mention him as involved in this offense conduct. *Id*. He objects to paragraph 32 because it only mentions him as being present at the Ruskin residence during a drug transaction on November 3, 2019, the day before Task Force Officer DelRio was shot and killed by Nathan Goddard. *Id*.

Defendant further objects to all information in paragraph 40 including, in part, that "investigators determined [he] was instrumental in obtaining the firearms from the straw purchaser Mill for himself and Goddard." *Id*. (italics omitted). Defendant then provides a different version of the facts described in paragraph 40 and argues that the evidence at trial differs from the facts asserted in PSR paragraph 40. *Id*. at PageID 1655. He emphasizes he was not instrumental in obtaining firearms, and he did not purchase Goddard's FN5-7 firearm. *Id*. He also notes that some of the incidents described in paragraph 40 occurred in September 2019, months before Task Force Officer DelRio's death. *Id*. He also alleges he did not send text messages or make phone calls regarding fentanyl and cocaine trafficking on November 4, 2019, the day Goddard shot and killed Task Force Officer DelRio. *Id*.

Defendant also objects to, and denies, the suggestion in PSR paragraph 42 that he was involved in the Walton Drug Trafficking Organization. *Id*.

Defendant's second set of objections targets PSR paragraphs 49 through 65. His main argument is that these paragraphs attribute to him Task Force Officer DelRio's murder and involvement in a large scale conspiracy. *Id*. at PageID 1658. He argues that, in determining his offense level under the United States Sentencing Guidelines, the PSR does not, but should have, used the fact he was found at trial not to have brandished a weapon. *Id*. He further maintains that the PSR's offense-level calculations are based on erroneous factual findings that make him (and/or his conduct) more egregious than that found by the jury. *Id*. at 1659. He characterizes himself as a "minor player, if at all." *Id*. He again emphasizes, "there was no evidence that [I] supplied the firearm to Goddard." *Id*. He finds "absurd" the argument

2

in paragraph 59 that he did nothing to stop Goddard's actions because he had only seconds to react when Task Force Officer DelRio was coming down the basement stairs, and he claims it would have been impossible for him to stop Goddard from doing what he did. *Id*. Defendant concludes that, due to the many errors and problems in paragraph 59, the six-point enhancement to his offense level applied in that PSR paragraph 59 does not apply. *Id*. Instead, according to Defendant, his offense level should be adjusted downwards by 4 levels, pursuant to Guideline § 3B1.2, because his role was minimal. *Id*.

Defendant finally contends that, in charging him with the murder committed by Goddard, the PSR relies heavily and improperly on the "jointly undertaken criminal activity" provision in the Guidelines, §§ 1B1.3(a)(1)(A), (B), and (a)(3). *Id*.

## II.

This Court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]" Fed. R. Crim. P. 32(i)(3)(B). "As a threshold matter, the defendant must actively raise the dispute during the sentencing hearing before the district court's duty to find facts arises." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). Once a defendant meets this threshold, "the 'court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'" *Id*. (quoting *United States v. Solorio*, 337 F.3d 580, 598 (6th Cir. 2003)). Literal compliance with this Rule is required "'for a variety of reasons, such as enhancing the accuracy of the sentence and the clarity of the record.'" *Id*. (quoting *United States v. Treadway,* 328 F.3d 878, 886 (6th Cir. 2003)).

"Generally, factual findings relevant to sentencing must be supported only by a preponderance of the evidence." *United States v. Hurst*, 228 F.3d 751, 761 (6th Cir. 2000) (citing *United States v. Zajac,*

3

62 F.3d 145, 148 (6th Cir. 1995)); *see United States v. McReynolds*, 964 F.3d 555, 565 (6th Cir. 2020) ("all facts used against a defendant at sentencing must be supported by a preponderance of the evidence"); *see also United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) ("judicial fact-finding for sentencing purposes must continue as it was conducted prior to *Booker,* under a preponderance of the evidence standard") (citing *United States v. Coffee,* 434 F.3d 887, 897-98 (6th Cir. 2006)).

### III.

Defendant's challenges to the facts asserted in the PSR rely on contrary trial evidence without specifying what trial evidence is contrary to facts stated in the PSR or relying on other evidence to negate those facts or support contrary facts. Because of this, Defendant's factual challenges to the PSR fail to identify sufficiently controverted facts to trigger the Court's fact-finding duty under Fed. R. Crim. P. 32(e)(3)(B). *See United States v. McGee*, 529 F.3d 691, 700 (6th Cir. 2008) ("the facts must be sufficiently 'controverted' to trigger the sentencing court's fact-finding duty…."). Defendant, at best, simply denies the truth of the facts he objects to, or he raises factual counterpoints, without referencing or pointing to evidence that places these matters in doubt. *See id*.

A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the PSR's facts are actually true. But the defendant gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR. *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quoting *United States v. Mustread,* 42 F.3d 1097, 1102 (7th Cir. 1994)) (cleaned up); *cf. United States v. Roberts*, 919 F.3d 980, 989 (6th Cir. 2019) ("Roberts never challenged the factual foundation of the mass-marketing enhancement, and therefore never triggered Rule 32's affirmative ruling requirement"); *United States v. Hunter*, 558 F.3d 495, 506 (6th Cir. 2009) ("Because

4

[the defendant] has not offered evidence to contradict either the testimony at trial or the estimate [related to drug quantities] [in] the presentence report, the district court was entitled to rely on those estimates in making its ruling").

In addition, the jury's determination that Defendant is guilty on Count Four of the superseding indictment—participating in a drug offense that resulted of the killing of Task Force Officer DelRio—resolves his factual challenges to the PSR. To make this determination, the jury had to conclude, based on proof beyond a reasonable doubt: (1) Defendant was a part of the charged drug conspiracy; (2) someone committed the intentional killing of Task Force Officer DelRio; (3) the intentional killing of Task Force Officer DelRio helped advance the conspiracy; and (4) the intentional killing was within the reasonably foreseeable scope of the unlawful project. *See* Doc. No. 199 at PageID 1171. Despite Defendant's invitation to do so, this Court cannot disturb those essential factual findings of the jury. *See United States v. Cockett,* 330 F.3d 706, 711 (6th Cir. 2003) ("[W]hen sentencing a defendant under the guidelines, [a court] cannot rely on a finding that directly conflicts with the jury's verdict"). Further, those findings by the jury on Count Four of the superseding indictment are identical to, and co-extensive with, the Guidelines' concept of relevant conduct under § 1B1.3(a)(1)(B) (providing that the defendant is responsible under the Guidelines "for all acts and omissions of others that were-- (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense"). Consequently, the jury's guilty verdict on Count Four renders the intentional killing of TFO DelRio relevant conduct as the PSR correctly recognizes. *See* Doc. No. 260 at PageID 1629-34, ¶¶ 27-44; PageID 1635-36, ¶¶ 49-55; *cf. United States v. Alvarez*, 266 F.3d 587, 595 (6th Cir. 2001) (defendant guilty of murder committed by co-conspirator when district court instructed

5

the jury that the phrase "intentional killing" "could be read to include … 'intentionally engaging in conduct which the defendant knew would create a grave risk of death to a person other than one of the participants in the offense and resulting in death to the victim'" (cleaned up)).

Assuming, *arguendo*, that Defendant's contentions trigger the Court's fact-finding duty under Rule 32(e)(3)(B), the evidence adduced at trial is sufficient to confirm the facts set forth in the PSR. The trial evidence, moreover, confirms Defendant's criminal liability for Task Force Officer DelRio's murder under the Guidelines' principles of relevant conduct, including jointly undertaken criminal activity as required under Guidelines § 1B1.3(a)(1)(B), and based on the Court's recollection of the evidence presented during Defendant's trial. *See United States v. Montgomery*, 592 Fed. App'x 411, 418 (6th Cir. 2014) (concluding that a district court may calculate the Guidelines based not only on the contents of the PSR but also upon facts it expressly recalled from trial testimony).

Despite Defendant's protestations that he was not engaged in drug trafficking, the evidence (and the verdict) compels the conclusion that he was part of a drug conspiracy. Defendant's cellular telephone records show he was present at 1454 Ruskin Road ("the Ruskin residence") on multiple occasions throughout 2019. For instance, upon returning from a trip to North Carolina in February 2019, Defendant went to the Ruskin residence—the location which Leyton Wint, Javon House, and physical evidence confirm was a long-running stash house for the group. Armed with a handgun fitted with a laser scope and extended magazine, Defendant was physically present at the Ruskin residence on November 3, 2019 (the day before Task Force Officer DelRio's murder), and again on November 4, 2019 (the day of his murder)—when the group stored hundreds of thousands of dollars of drugs in that home. As FBI Special Agent Robert Buzzard testified at trial, drug traffickers arm themselves with handguns to protect their drugs and to deter would-be robbers. Defendant's armed presence at the Ruskin residence proved consistent with this fact, as was Goddard's act of shooting and killing Task Force Officer DelRio while

6

he descended the basement stairs toward Goddard, Defendant, drugs, and large amounts of cash.

Through a series of text messages recovered from Defendant's phone, he confirmed his association with, and participation in, Goddard's drug activities. On November 4, 2019, Defendant texted and informed a person identified as "Big Vonn" that he (Defendant) had marijuana for sale. Defendant also advised Big Vonn that Goddard had "ol boy and girl here wit'em"—meaning Defendant knew Goddard had fentanyl and cocaine with him at the Ruskin residence when he visited it on November 3, 2019. When Big Vonn asked the price, Defendant responded: "word let me find out." After placing a call to Goddard, Defendant messaged Big Vonn that the cocaine ("old girl") cost $32,000 and fentanyl ("dude") sold for $60,000. The text exchange revealed that Defendant's involvement in the drug trade was not isolated. He and Bigg Vonn referenced other drug purchases in the text exchange. In sum, Defendant's active efforts to find a customer for Goddard placed Defendant in the drug conspiracy and revealed his knowledge of it.

Moreover, Defendant's false statements during his post-*Miranda* interview further tied him to the conspiracy. During that interview, Defendant denied seeing cash and contraband (namely, drugs) located inches in front of him. Despite sitting several feet or less from Goddard's gun and thousands of dollars of marijuana, Defendant disclaimed any knowledge of both. He further denied witnessing a drug deal that occurred in front of him moments before police searched the Ruskin residence. Defendant's false statements reflect his culpability and involvement in the conspiracy.

Additionally, Defendant helped arm Goddard during his drug trafficking activities. Defendant purchased the laser sites affixed to both men's firearms on November 4, 2019. Defendant helped acquire the FN firearm that Goddard used to kill Task Force Officer DelRio. Specifically, an arms trafficker ordered Goddard's FN firearm and transferred it to Sherman Parson during August 2019. Given that Defendant was in North Carolina when the gun arrived, Goddard directed Parson to arrange delivery of

the FN firearm through Defendant. As detailed in text messages introduced at trial, on or about August 17, 2019, Parson and Defendant contacted one another and arranged for the transfer of Goddard's FN firearm. Defendant ultimately delivered the FN firearm to Goddard. At some point, Defendant acquired his own matching FN handgun.

In sum, and in light of the above, Defendant's first objection to the PSR lacks merit. The shooting and death of Task Force Officer DelRio naturally flowed from Defendant's jointly undertaken activity with Goddard and others. As FBI Special Agent Robert Buzzard testified at trial, drug dealing is an inherently dangerous business. Drug traffickers arm themselves with firearms to protect their product and illegal cash and to deter police from searching locations. Given that both Defendant and Goddard armed themselves in this manner, it is foreseeable that one or both of them would use their firearms to defend the Ruskin residence from police or robbers.

## IV.

As indicated above, Defendant's second set of objections focuses on the impact PSR paragraphs 49 through 65 have in attributing Task Force Officer DelRio's murder and the large-scale conspiracy to Defendant. Doc. No. 260 at PageID 1658-60. Defendant seeks to show that he was not involved in "jointly undertaken criminal activity" sufficient to constitute "relevant conduct" pursuant to Guidelines § 1B1.3. *See id*. at PageID 1658-64.

Under the Guidelines, a defendant's base offense level is determined by "relevant conduct." *See* § 1B1.3(a); *see United States v. Lucas*, Nos. 19-6390/6392/6393/6394, 2021 WL 4099241, at *11 (6th Cir. Sept. 9, 2021). Relevant conduct includes "all acts and omissions" that were: (1) "within the scope of the jointly undertaken criminal activity"; (2) "in furtherance of that criminal activity"; and (3) "reasonably foreseeable in connection with that criminal activity." § 1B1.3(a)(1)(A)-(B); *cf. United States v. Rich*, 14 F.4th 489, 495-97 (6th Cir. 2021) (discussing cases).

8

The reasons set forth above, § III, for rejecting Defendant's first set of objections resolves Defendant's factual assertions supra to his second set of objections. His remaining arguments seek to distinguish cases decided by the United States Court of Appeals for the Sixth Circuit and other Circuits concerning what constitutes "jointly undertaken criminal activity" and "relevant conduct" under Guidelines § 1B1.3. *Id*. at 1659-63. After reviewing each case Defendant cites and considering his arguments related thereto, the Court remains convinced that Defendant engaged in jointly undertaken criminal activity and, hence, relevant conduct sufficient to support the PSR's application of Guidelines §§ 1.B1.3(a)(1)(A), (B), and (a)(3).[1]

## V.

For the above reasons, Defendant's objections to the PSR are **OVERRULED**.

**IT IS SO ORDERED.**

September 15, 2024                                    s/*Michael J. Newman*
                                                      Hon. Michael J. Newman
                                                      United States District Judge

---

[1] In reaching this conclusion, the Court has reviewed and considered the following cases cited by Defendant (as indicated in the PSR, *see* Doc. No. 260 at PageID 1659-64): *United States v. Campbell*, 567 Fed. App'x 422 (6th Cir. 2014); *United States v. Tocco*, 306 F.3d 279 (6th Cir. 2002); *United States v. Corrado*, 227 F.3d 528 (6th Cir. 2000); *United States v. Holloway*, 480 Fed. App'x 374 (6th Cir 2012); *United States v. Anderson*, Nos. 97-5352, 97-5382, 1998 WL 833701 (6th Cir. Nov. 20, 1998); *United States v. McDougle*, 82 Fed. App'x 153 (6th Cir. 2003); *United States v. Anderson*, 795 F.3d 613 (6th Cir. 2015); *United States v. Patriarca*, 912 F. Supp. 596, 606 (D. Mass. 1995); *United States v. Evbuomwan*, 992 F.2d 70 (5th Cir. 1993); *United States v. Adams*, 1 F.3d 1566 (11th Cir. 1993); *United States v. Tabron*, 437 F.3d 63 (D.C. Cir. 2006); and *United States v. Childress*, 58 F.3d 693 (D.C. Cir. 1995).